UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DUANE K. BALLEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:20 CV 765 CDP |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Duane K. Ballew brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  For the reasons that follow, I will reverse the decision and remand for further proceedings.

### Procedural History

On March 2, 2018, the Social Security Administration denied Ballew's December 2017 applications for DIB and SSI in which he claimed he became disabled on April 21, 2016, because of traumatic brain injury; seven surgeries on

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

right leg; nerve damage from shoulder to foot; memory loss/ processing information/confusion; numbness in right arm, hand, and leg; crying spells; back and all-over body pain; and bad balance.  A hearing was held before an administrative law judge (ALJ) on July 10, 2019, at which Ballew and a vocational expert (VE) testified.  On September 19, 2019, the ALJ denied Ballew's claims for benefits, finding that VE testimony supported a conclusion that Ballew could perform work that exists in significant numbers in the national economy.  On April 9, 2020, the Appeals Council denied Ballew's request for review of the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.

In this action for judicial review, Ballew claims that the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, Ballew argues that in determining his residual functional capacity (RFC), the ALJ improperly ignored substantial evidence of disability while cherry-picking only that evidence that supported her adverse determination, including the remote opinion of a State-agency, non-examining consultant.  Ballew also contends that the medical evidence of record, when considered as a whole, does not support the RFC assessment and that the ALJ should have obtained medical opinion evidence addressing Ballew's ability to function in the workplace.  Finally, Ballew argues that the ALJ improperly relied on VE testimony to find him not disabled because the ALJ did not include all of his limitations in the hypothetical questions posed to

the VE.  Ballew asks that I reverse the ALJ's decision and remand for further evaluation.

### Medical Records and Other Evidence Before the ALJ

In July 2002, Ballew was struck by a motor vehicle as he was crossing the street, resulting in an open fracture of his right tibia and fibula, a closed fracture of his right ulna distal shaft, and multiple lacerations to his right arm.  There was questionable loss of consciousness at the scene and questionable closed head injury and neck injury.  He underwent surgery for the fractures in his right leg and to close the right elbow and forearm.  He developed osteomyelitis in the right leg and required extensive care, which was the basis for his obtaining disability benefits in 2003.  His benefits ceased in January 2016 upon his incarceration for DWI offenses.  He had several lay-in restrictions during his incarceration, including no prolonged standing; no repetitive bending, stooping, or squatting; no stairs; no work activities; use of a cane; and use of a helper with food trays.  He was released from imprisonment in November 2017, after which he reapplied for disability benefits.

Upon his release, Ballew enrolled in COMTREA Health Center's CSTAR (Comprehensive Substance Treatment and Rehabilitation) program, where he received regular counseling and treatment to maintain sobriety and to develop coping skills for anxiety.  He successfully completed the program in May 2018 but

was approved for additional counseling services because of his high anxiety.  He continued to receive regular counseling and treatment through the close of the record in this case.  He was also treated by psychiatrists for generalized anxiety disorder and major depressive disorder for which he was prescribed psychotropic medications.

Ballew also suffered from a seizure disorder for which he was prescribed medication; and he experienced back pain, knee pain, and pain associated with kidney stones that ultimately required surgery and the placement of stents.  He experienced tingling and numbness in his arms, and nerve conduction studies and EMGs performed in November 2018 showed bilateral carpal tunnel syndrome of the wrists and bilateral cubital tunnel syndrome of the elbows.  Nerve conduction studies and EMGs of the lower extremities in December 2018 showed advanced peroneal neuropathy in the left leg and tibial nerve entrapment at the right ankle.  CT scans of the cervical spine showed degenerative disc disease and foraminal stenosis.  CT scans and an MRI of the right knee showed osteochondroma, osteoarthritis with joint space narrowing, patella alta, chondromalacia, multiple cyst formation, cyst/erosion involving the proximal tibia, and small knee joint effusion.  From February 2018 through the close of the record in this case, Ballew regularly visited and received treatment – including narcotic pain medication and steroid injections – from pain management specialists whose diagnoses of Ballew's

conditions included chronic pain syndrome, fibromyalgia, osteoarthritis of the right knee, cervical spondylosis, cervicalgia, sacroiliitis, lumbar radiculopathy, lumbosacral spondylosis, lumbar disc displacement, and sciatica.

Throughout the post-incarceration treatment of his mental and physical impairments, Ballew expressed frustration regarding the effectiveness of his medications as well as medication side effects; his medications and dosages were continually adjusted.  He also expressed frustration at what he perceived to be inattentiveness of some of his health care providers, which resulted in the termination of treatment and his securing a new psychiatrist and pain management specialist in 2018.

With respect to medical records and other evidence of record, I adopt Ballew's recitation of facts set forth in his Statement of Uncontroverted Material Facts (ECF 22) as admitted by the Commissioner with clarification (ECF 27-1). This Statement provides a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   <u>Legal Standard</u>

To be eligible for DIB and SSI under the Social Security Act, Ballew must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.

2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is

- 6 -

able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968.

Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B. <u>The ALJ's Decision</u>

The ALJ found that Ballew met the insured status requirements of the Social Security Act through September 30, 2020 and had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date of disability. The ALJ found that Ballew's seizures, depression, anxiety, opioid dependence, alcohol use disorder in early remission, and osteoarthritis of the right knee were severe impairments but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14.) The ALJ determined that Ballew's kidney stone condition and carpal tunnel syndrome were not severe. (*Id.*) The ALJ found that Ballew had the RFC to perform light work but was limited to

- 8 -

"occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds.  The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is limited to simple, routine tasks with minimal changes in job duties and setting."  (Tr. 15.)

Considering Ballew's RFC, age, education, and lack of past relevant work, the ALJ found vocational expert testimony to support a conclusion that Ballew could perform work as it exists in significant numbers in the national economy, and specifically, as a housekeeper, cafeteria attendant, and price marker.  The ALJ thus found that Ballew was not under a disability from April 1, 2016, through the date of the decision.  (Tr. 21-22.)

C.    RFC Determination

Ballew challenges the manner and method by which the ALJ assessed his RFC, and specifically the ALJ's failure to adequately consider all of the evidence of record, failure to obtain opinion evidence addressing Ballew's ability to function in the workplace, and determination of an RFC that is not supported by the record.

Residual functional capacity is the most a claimant can do despite his physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own

description of his symptoms and limitations. *Goff*, 421 F.3d at 793; 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue,* 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting S.S.R. 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). A claimant's RFC is a medical question, however, "that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001)).

The record contains opinion evidence from a non-examining psychological consultant with disability determinations who opined on March 2, 2018 that Ballew did not have any medically determinable mental impairments. (Tr. 57.) The ALJ found this opinion unpersuasive given the contrary evidence of record from COMTREA. (Tr. 20.) The only other opinion evidence of record comes from Dr. Manuel Salinas, a non-examining medical consultant with disability determinations who opined on March 2, 2018 that Ballew could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and/or walk

about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and was unlimited in his ability to push or pull with his hands and feet. Dr. Salinas further opined that, because of Ballew's use of a cane, he could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, or scaffolds.  He also opined that Ballew had no manipulative, communicative, or environmental limitations.  (Tr. 58-60.)  The ALJ found this opinion evidence persuasive, stating that it was consistent with and supported by the record at the time of Dr. Salinas's review, and that there was no substantial change in Ballew's condition after this review.  (Tr. 21.)  This conclusion is not supported by substantial evidence on the record as a whole and appears to be based on an incomplete review of the record.

To support his opinion on Ballew's functional limitations, Dr. Salinas stated that

> in prison . . . [Ballew] was given lay-ins related to limited mobility of the RLE [right lower extremity].  He was noted to have a limp, use a cane, and had decreased strength and mobility in the RLE.  In 4/2017 he was noted to have no proprioception on the right side and right side strength and DTR [deep tendon reflexes] deficits.  There is no MDI [medically determinable impairment] to support a cause for these findings.  There is no evidence of other limitations.

> He did have some kidney stones in 2017.  He did have some complaints of chronic pain, including back pain.  No back limitations were noted.

(Tr. 60.)  Contrary to the ALJ's finding, there was substantial change in Ballew's

condition after Dr. Salinas's review of the record in March 2018, including evidence and diagnoses of medically determinable impairments causing Ballew's symptoms, evidence of back limitations, and evidence of other physical impairments (*e.g.*, seizures and carpal/cubital tunnel syndrome) and related limitations.

As set out above, diagnostic imaging performed in November and December 2018 showed, *inter alia*, advanced neuropathy in the left leg, nerve entrapment at the right ankle, degenerative disc disease and foraminal stenosis of the cervical spine, and several pain-inducing conditions of the right knee.  Ballew continually exhibited limited range of motion with pain about the back, tenderness about the lumbar spine, and positive straight leg raising.  Give-way of the right knee was recorded on two occasions – by neurologist Dr. Michael D. Snyder in March 2019 and by pain specialist Dr. Gurpreet Padda in December 2018 (Tr. 439, 782).  Beginning in December 2018 and continuing through March 2019, Dr. Padda observed that Ballew had "severe antalgic gait with pelvic tilt" with "worsening pain to ambulation and going from sitting to standing position."   (Tr. 755-71.)  Ballew regularly received steroid injections to his back, neck, and knee and was prescribed significant pain medication throughout his treatment, including Percocet and Methadone.

Ballew also suffered from a seizure disorder and experienced multiple

seizure episodes, including some that required trips to the emergency room and hospitalization.  (*See*, *e.g.*, Tr. 325, 333, 428, 729.)  An EEG of the head in June 2018 yielded normal results, but it was noted that a normal result "does not exclude a diagnosis of epilepsy."  (Tr. 702, 920.)  Notably, the record shows that Tegretol controlled Ballew's seizures when he was compliant in taking the medication, but he told his health care providers that he was noncompliant because the medication caused dizziness, sleepiness, and mental slowness.  (Tr. 405, 408, 726, 908.) Throughout Ballew's treatment, several providers noted that he exhibited slow speech and/or cognitive slowing on examination.  And in March 2019, Dr. Snyder referred Ballew to a neuropsychologist given Ballew's history of seizure activity, presentation of confusion and slowed speech, and complaints of cognitive deficits and balance difficulty, confounded by Ballew's anxiety and depression.  (Tr. 437-45.)

Finally, the record shows that beginning in January 2018, Ballew complained to Dr. Jesse Helton, his primary care physician, that he experienced numbness in his right arm.  (Tr. 430-33.)  In July 2018, he complained of tingling in both hands and arms.  At that time, Phalen's test was positive bilaterally, and Tinel's sign was positive on the right.  (Tr. 410-13.)  Ballew continued to complain of bilateral numbness and tingling in October 2018 (Tr. 406-09), and as noted above, EMGs and nerve conduction studies performed in November 2018

confirmed bilateral carpal and cubital tunnel syndrome.  (Tr. 786-87.)  At the

administrative hearing held in July 2019, Ballew testified that he does not have

good feeling in his hands and arms and that he drops things a lot.  (Tr. 37-38, 44.)

Ballew filed his applications for benefits after March 2017.  Accordingly,

the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§

404.1520c, 416.920c.  Under these Regulations, ALJs are to consider all medical

opinions equally and evaluate their persuasiveness according to several specific

factors – supportability, consistency, the medical source's relationship with the

claimant, specialization, and other factors such as the source's familiarity with

other evidence in the claim.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  "When we

consider a medical source's familiarity with the other evidence in a claim, we will

also consider whether new evidence we receive after the medical source made his

or her medical opinion . . . makes the medical opinion . . . more or less persuasive."

20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The factors of supportability and

consistency are the most important factors for an ALJ to consider, and the ALJ

must explain her consideration of these factors in her decision.  20 C.F.R. §§

404.1520c(b), 416.920c(b).

Because an ALJ must determine a claimant's abilities as they exist at the

time of the hearing, she cannot rely on remote evidence to determine a claimant's

abilities.  *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995); *see also Morse v.*

*Shalala*, 32 F.3d 1228, 1230-31 (8th Cir. 1994) (ALJ erred by relying on old medical report and gave no weight to subsequent supporting evidence). Accordingly, while Dr. Salinas's opinion may have been consistent with and supported by the record "as he reviewed" it in March 2018 (Tr. 21), the ALJ was required to determine Ballew's functional ability to perform work-related activities as of the date of the hearing, that is, July 10, 2019.  In view of the record evidence as set out above, the ALJ's statement that Ballew's condition did not substantially change after Dr. Salinas rendered his opinion in March 2018 is not supported by substantial evidence on the record as whole.  The ALJ therefore erred in finding the opinion persuasive in determining whether Ballew was disabled.

Moreover, a review of the ALJ's decision *in toto* shows that the ALJ appeared herself to not fully consider the evidence of record in determining whether Ballew was disabled.  For instance, in assessing the severity of Ballew's mental impairments, the ALJ found Ballew to have no limitation in his ability to adapt or manage himself given his fair insight and judgment observed by his psychiatrist, Dr. Jhansi Vasireddy, on October 4, 2018.  (*See* Tr. 14, 490.)  But the record shows that on at least six other occasions, and consistently beginning in November 2018 and continuing to the close of the record, Dr. Vasireddy noted that Ballew's insight and judgment was fair to poor (*see* Tr. 496-97, 486, 482, 476, 472, 464), which is consistent with substantial evidence of record showing that

- 15 -

Ballew's depression worsened during this period.  (Tr. 464-80.)

As to Ballew's physical impairments, the ALJ noted that Dr. Helton recorded in February 2019 that Ballew had full range of motion and that Dr. Snyder recorded in March 2019 that Ballew had normal range of motion.  (Tr. 20.)[2] But the ALJ's decision is silent as to the pain management specialists' specific testing for and repeated clinical observations of limited range of motion about the cervical and lumbar spine, positive straight leg raising, paraspinal spasticity, sacroiliac compression, and positive Patrick's test.  (*See*, *e.g.*, Tr. 798, 806, 825, 841, 850, 876-77.)  Nor does the ALJ address the several diagnoses rendered by the pain management specialists, including Dr. Nehal Modh's diagnoses of, *inter alia*, fibromyalgia, chronic pain syndrome, muscle contracture, lumbar disc degeneration, and sacroiliitis as well as Dr. Padda's compatible and additional diagnoses of, *inter alia*, chronic low back pain with radiculopathy, lumbosacral spondylosis, and cervical spondylosis.  Finally, the ALJ briefly addressed Ballew's diagnosed carpal tunnel syndrome, but only to find it as a non-severe impairment.  (Tr. 13-14.)  While the ALJ noted that Ballew complained in July 2018 that he had pain in his hands and that Phelan's and Tinel's tests were positive at that time, she does not address Ballew's consistent complaints of pain, tingling, and/or numbness

---

[2] Notably, these physicians' notations were made during and in relation to follow up examinations on Ballew's seizure activity for which he was hospitalized in February 2019.

of the upper extremities beginning in January 2018 and continuing regularly into 2019 (*see*, *e.g.*, Tr. 400, 408, 431, 747, 786-87); nor does the ALJ acknowledge that diagnostic testing performed in November 2018 in response to these consistent complaints affirmatively showed bilateral carpal and cubital tunnel syndrome.[3]

I am aware that an ALJ is not required to explain all the evidence in the record. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). But she nevertheless cannot pick and choose only that evidence buttressing her conclusion. *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019). *See also Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.")). The ALJ should at least "minimally articulate [her] reasons for crediting or rejecting evidence of disability." *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997); *Taylor*, 333 F. Supp. 2d at 856. The ALJ failed to do so here. While the ALJ may

---

[3] The ALJ determined that Ballew's carpal tunnel syndrome was not severe because he had not been prescribed a splint or brace. (Tr. 13-14.) An ALJ may not "play doctor," however, and rely on her own beliefs as to what the medical evidence should show to establish disability. *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009); *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989). Regardless, an ALJ must nevertheless consider a claimant's non-severe impairments in determining RFC. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). It does not appear that the ALJ did so here with regard to Ballew's bilateral carpal and cubital tunnel syndrome.

have considered and for valid reasons rejected this evidence, I am unable to

determine whether any such rejection is based on substantial evidence given the

ALJ's wholesale failure to address it.  *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir.

1985).  It is not within the province of this Court to speculate as to whether or why

the ALJ may have rejected certain evidence.  *Id.*

      The ALJ found Ballew able to perform simple, light work with few postural

limitations.

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds. . . .
> [A] job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To be considered capable
> of performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.927(b).  But Dr. Salinas's March 2018 opinion is

the only evidence arguably supporting the determination that Ballew can perform

the functional requirements of such work.  For the reasons set out above, however,

Dr. Salinas's opinion does not provide substantial evidence of Ballew's functional

abilities at the time of the hearing.  And a review of the record as a whole shows

that there is no reliable medical evidence providing a basis for the ALJ's

conclusion that Ballew can perform the requirements of light work as set out in the

Regulations and in her RFC determination.  While an ALJ need not "obtain from

medical professionals a functional description that wholly connects the dots

between the severity of [a claimant's impairments] and the precise limits on a claimant's functionality[,] [s]omething . . . is needed." *Noerper*, 964 F.3d at 746.

The ALJ may not simply draw her own inferences about a claimant's functional abilities from medical reports. *Combs*, 878 F.3d at 646. Given the absence of evidence "translating the medical evidence and subjective complaints into functional limitations," I am unable to determine "the permissibility of the Commissioner's RFC determination[,]" and specifically whether Ballew indeed can perform simple, light work with only a few postural limitations and no manipulative, communicative, or environmental limitations. *Noerper*, 964 F.3d at 747. Because the record lacks evidence of Ballew's functional limitations, it cannot be said that ALJ fulfilled her duty to fully and fairly develop the record. *Id.*

Accordingly, I will remand the matter to the Commissioner with instruction to more fully develop and evaluate the record with respect to the functional limitations imposed by Ballew's mental, cognitive, and physical impairments; and to engage in the proper analysis in determining the extent to which such functional limitations – including Ballew's reliance on the use of a cane to ambulate – affect his ability to perform work-related activities.

## Conclusion

For the reasons stated above, the ALJ's decision is not supported by substantial evidence on the record as a whole. I will therefore reverse the

Commissioner's final decision and remand the matter for further proceedings.

Upon remand, the Commissioner shall obtain and provide the parties an opportunity to submit additional medical and other evidence that addresses Ballew's ability to function in the workplace in light of his mental, cognitive, and physical impairments.  This evidence may be obtained from Ballew's treating physicians and counselors and/or by consultative examinations from relevant medical sources, including a neuropsychologist.  *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Fendler v. Saul*, No. 4:19CV2431 CDP, 2020 WL 3101043, at *8 (E.D. Mo. June 11, 2020); 20 C.F.R. §§ 404.1517, 416.917.

The ALJ must reevaluate Ballew's RFC, which must include an assessment of the record evidence and Ballew's subjective statements of symptoms.  This RFC shall be based on some medical evidence in the record and shall be accompanied by a discussion of the evidence in a manner that shows how the evidence supports each RFC conclusion.  The Commissioner is reminded that consideration must be given to the limitations and restrictions imposed by *all* of Ballew's medically determinable impairments, both severe and non-severe, as well as limitations imposed by medication side effects.  *Ford*, 518 F.3d at 981 (citing 20 C.F.R. § 404.1545(a) (severe and non-severe impairments must be considered)); *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000) (ALJ obligated to consider combined effects of impairments).  *Cf. Vincent v. Apfel*, 264 F.3d 767,

769 (8th Cir. 2001) (RFC findings failed to account for medication side effects).

Whether and to what extent the ALJ finds opinion evidence persuasive in

determining Ballew's RFC must be properly informed and supported by the record

as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**REVERSED**, and this case is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is

entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of September, 2021.